1  THE UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF FLORIDA
2
   MIAMI DIVISION
3
   CASE NO.:  21-cv-22196-RKA
4

5

6

7
   LUXOTTICA GROUP SPA,          )
8                                )
               Plaintiff,        )        December 7, 2021
9  v.                            )
                                 )
10 FOCUS CAMERA LLC, et al.,     )        Pages 1 - 43
                                 )
11             Defendants.       )
   _____/
12

13

14
                    DISCOVERY HEARING
15
                      (Via Zoom)
16
          BEFORE THE HONORABLE LISETTE M. REID
17            UNITED STATES MAGISTRATE JUDGE

18

19

20
   APPEARANCES:
21
   On behalf of the Plaintiff:
22
          ROSEMBERG LAW
23        20200 West Dixie Highway
          Suite 602,
24        Miami, FL 33180
          BY:  DAVID B. ROSEMBERG, ESQ.
25

```
 1    APPEARANCES CONTINUED:
 2
 3    On behalf of the Defendants:
 4              DAMIAN & VALORI LLP
                1000 Brickell Avenue
 5              Suite 1020,
                Miami, FL 33131
 6              BY:  PETER F. VALORI, ESQ.
 7
 8              ARONBERG GOLDGEHN DAVIS & GARMISA
 9              330 North Wabash Avenue,
                Suite 1700,
10              Chicago, IL 60611
                BY:  GENC ARIFI, ESQ.
11
12
13    Transcribed By:
14              BONNIE JOY LEWIS, R.P.R.
15              7001 SW 13 Street
                Pembroke Pines, FL  33023
16              954-985-8875
                caselawrptg@gmail.com
17
18
19
20
21
22
23
24
25
```

```
 1                    (Thereupon, the following proceeding was held:)
 2               MR. ROSEMBERG:  Good morning.
 3               MR. ARIFI:  Good morning, Your Honor.
 4               THE COURT:  Good morning, everyone.
 5               Let me see if I can get this right at the right end of
 6  the screen.  You know, it's like takes some work to get
 7  everything.  I'm glad that we're all here.
 8               This is a discovery dispute in Case 21-cv-22196;
 9  Luxottica Group versus Focus Camera and Anthony Berkowitz.
10               Can I get appearances from counsel, please?
11               MR. ROSEMBERG:  Your Honor, can you hear me okay?
12               THE COURT:  We will start with the Plaintiff.
13               MR. ROSEMBERG:  Your Honor, can you hear me?
14               THE COURT:  Yes, I can.
15               MR. ROSEMBERG:  Good morning.
16               David Rosemberg on behalf of Luxottica Group, the
17  Plaintiff.
18               THE COURT:  Okay.
19               MR. ARIFI:  Good morning, Your Honor.  Genc Arifi on
20  behalf of both Defendants.
21               THE COURT:  Okay.  Very good.  Thank you.
22               So this is the Plaintiff's motion to compel.  I see
23  that you have e-mailed me a motion that I have reviewed and
24  there are various documents here.
25               So let's start with the first issue, which is request
```

1   number 116 where Plaintiff is requesting the annual financial

2   statements or reports for the past three years of Focus Camera

3   and Focus Camera's response is that it's not reasonably

4   calculated to lead to discoverable information as Luxottica has

5   elected to pursue statutory damages.

6           Now, let me point this out to the Defendants that

7   Luxottica has referenced cases in which they have pointed out

8   that judges have ruled that this information, just the general

9   revenues of the Defendants is relevant in the term of statutory

10  damages.

11          What cases do you have or what argument do you want to

12  present on that issue?

13          MR. ARIFI:  Sure, Your Honor.  If I may?

14          So the cases that Plaintiff relies on are usually

15  distinguishable.  Although it is not pointed out in their

16  motion, a lot of those cases involve other claims such as

17  unfair competition, which don't have statutory damages to rely

18  on, or where cases where the Plaintiff explicitly asks in

19  addition to actual and compensatory damages Plaintiff is

20  entitled to the maximum statutory damages.

21          So those are different.  Whereas here, through their

22  pleadings and even through their election of remedies they have

23  explicitly and solely elected statutory damages.

24          Now, as Your Honor is aware I believe it is Section 15

25  USC 117, pursuant to that section that section sets out in very

1   plain terms that only the number of alleged counterfeit marks

2   is needed to determine statutory damages.  So we don't really

3   need to go and delve into Defendants' financial documents and

4   their corporate structure.

5          And just by a little way of introduction, Focus Camera

6   is a relatively small electronics merchant that sells photo

7   video equipment, as well as other office equipment anywhere

8   ranging from computers, printers, cameras, lenses for cameras

9   and everything else that would be listed under office

10  equipment.

11         Now their online store also features a separate

12  section that is titled, Lifestyle By Focus.  That section

13  advertises and sells home goods, kitchen goods, sporting goods,

14  tools, home improvement goods and fashion accessories.

15         Now as part of that the fashion accessory section

16  Focus Camera, through its Lifestyle Focus brand, also sells

17  sunglasses.  So it is accurate to say that sunglass sales

18  actually make up a very small percentage of their Lifestyle By

19  Focus brand, which in turn makes up -- I would think it is

20  accurate to say -- makes up a smaller percentage of their

21  overall sales from their office equipment.

22         THE COURT:  Let me ask you this, Mr. Arifi, is there

23  any dispute that Focus Camera sold Ray-Ban sunglasses?

24         MR. ARIFI:  So there is no dispute that Focus Camera

25  sold Ray-Ban sunglasses.  However, and I think counsel will

1  also agree, their Plaintiff's investigator purchased over

2  100 pairs of Ray-Ban sunglasses, which only 29 pairs were

3  allegedly counterfeit.  So I think it is also accurate to say

4  that if Focus Camera sold counterfeit sunglasses, they also

5  sold non counterfeit sunglasses.  So that's the other issue.

6          This isn't the case where all the of the Ray-Ban

7  sunglasses sold were counterfeit.  So that muddles things a

8  little bit.

9          THE COURT:  Okay.  So let me hear from you, Mr.

10  Rosemberg on the issue.

11          MR. ROSEMBERG:  Sure.  May it please the Court, Your

12  Honor?

13          This is a trademark counterfeiting case.  The

14  Plaintiff has elected to recover statutory damages.  In

15  assessing statutory damages, the jury will have to consider

16  seven factors.

17          These seven factors are the standard factors

18  considered in the Eleventh Circuit.  They were set forth in the

19  *Casa Martinez* case here in the Southern District.  And then,

20  recently in *Volkswagon Corp v. Verona* by Judge Goodman on

21  May 18th of 2021.

22          These seven factors include, among other things, the

23  expenses saved in the profits reaped by the Defendant, the

24  revenues lost by the Plaintiff, the potential for discouraging

25  the Defendant, which means the Defendants' wealth.  And so this

1  is all information that is obtained and gleaned from the tax

2  returns and financial statements.

3         Moreover, if the Court were to look to the Eleventh

4  Circuit pattern jury instructions on trademark counterfeiting

5  and damages, 10.6 Trademark Counterfeiting provides if part of

6  the pattern jury instruction that in determining profits, a

7  Plaintiff is only required to prove the Defendants' gross

8  sales.

9         It's not limited.  When I made this argument to

10  Magistrate Judge Snow in the *Coach v. Swap Shop* case, which was

11  subsequently affirmed by Judge Dimitrouleas, they agreed.  In

12  *Luxottica Group v. Airport Mini Mall* in 2017 Northern District

13  of Georgia case Judge Totenberg agreed.

14         Every case in the Middle District of Florida, *Coach v.*

15  *Visitor's Flea Market*, I think the case law is pretty

16  consistent that financial statements and tax returns of a

17  defendant are relevant for a jury or for the trier-of-fact, if

18  it's the Judge.  In assessing statutory * one cannot assess the

19  proper amount of statutory damages, right?  You have to

20  calculate statutory damages.

21         So this information goes to the heart of statutory

22  damages of assessing statutory damages.  It's not about how

23  many glasses were sold or how many counterfeit products were

24  sold.  The case isn't about whether authentics were sold.  This

25  is about a Plaintiff's right to elect the type of damages

1    before trial, which Plaintiff has done and it's fair game.

2          We have a protective order in place and we need this.

3    It's relevant.  It meets the standard of relevance and it's

4    proportional because we have only asked for three years.

5          THE COURT:  Okay.  I've read these cases and they

6    certainly appear to be relevant to me, Mr. Arifi.  What would

7    be your best case to dispute this?

8          MR. ARIFI:  Your Honor, if I just may?  I would like

9    to distinguish the *Coach v. Swap Shop.*  I believe counsel was

10   counsel for *Coach* at that time as well.

11         I think he is being a little bit disingenuous on the

12   arguments that were before the Court.  So in that case, there

13   was an issue of *alter ego* that was at play.

14         And we can ask counsel, but he made the argument

15   before the Court in his motion that it was because of the *alter*

16   *ego* issue that he needed the tax returns, the corporate

17   structure documents.

18         So, whereas here, there are no allegations of an *alter*

19   *ego* issue.  So I don't see how -- oh, and one more thing.

20   There is no allegation that Mr. Berkowitz personally benefitted

21   from the sale of alleged counterfeit goods.  So if anything,

22   his tax returns are irrelevant here.

23         THE COURT:  Okay.  So I'm looking at the statute

24   itself and I'm looking at the case.

25         MR. ROSEMBERG:  Your Honor --

1          THE COURT:  Let me have just a few minutes.

2          MR. ROSEMBERG:  I'm sorry.

3          THE COURT:  The statutory damages.

4          So under 117(c) he can elect an award of statutory

5     damages for any such use in connection with the sale offering

6     distribution of goods.

7          Now the Court has to have some background in order to

8     determine the amount of that statutory damages.  And if it is

9     to have a deterrent effect, which is the whole purpose of

10    setting up statutory damages when it is difficult or impossible

11    to determine the actual damages, that deterrent effect is going

12    to have to come from knowing the revenues of the Defendant in

13    the case.

14         How else, Mr. Arifi, would the Court be able to

15    determine statutory damages?

16         MR. ARIFI:  Well, Your Honor, I think -- and counsel

17    cited the *PetMed Express*, Inc. and the *MedPets.Com* case.  I

18    think that the same kind of reasoning can apply here.  So here

19    we have a company that sells a slew of different goods.  Plus

20    sunglasses, which is a very, very small portion of their sales

21    in total.

22         I think it would be prejudicial if Plaintiff was able

23    to present the case to the jury and state that, hey, this

24    company has ex-amount of sales and profits.  And therefore,

25    they should be awarded ex-amount of money in the statutory

 1   damages, but at the same time, that sale or those sales and

 2   profits don't necessarily reflect their infringing conduct.  So

 3   that's what the issue here is.

 4          THE COURT:  No, I understand that.

 5          But I think that Mr. Rosemberg is correct on how the

 6   Courts have interpreted the statute and I think that it is

 7   reasonably calculated to lead to discoverable information in

 8   this instance.

 9          Let me ask you this, however.  So these annual

10   financial statements or reports are for three years and it

11   looks like the conduct that is alleged here is really closer to

12   two years.

13          Isn't it, Mr. Rosemberg?

14          MR. ROSEMBERG:  No, Your Honor.

15          The conduct alleged I believe is 2019, '20 and '21.

16   There was conduct before, but we didn't bring it in the case

17   just for statute of limitation purposes.  So it's about two

18   years.

19          THE COURT:  So it's about two and-a-half, I guess

20   April 27 of 2021; so about two and-a-half.  Okay.  So three

21   years would give you a general idea within that timeframe the

22   revenues of the company.

23          MR. ROSEMBERG:  And of the Defendant who is also a

24   Defendant.  Mr. Berkowitz is an individual Defendant.  We have

25   alleged that he is the moving force behind the company's

1  operations.  He is equally liable.  So it is not just limited

2  to the company.  We have also sought Mr. Berkowitz'.

3          THE COURT:  Okay.  So let me ask Mr. Arifi questions

4  on that.

5          Now why isn't it appropriate to also ask the owner of

6  the company, the person who is profiting from the revenues?

7          MR. ARIFI:  Well, that's just what the issue is.

8  There is no allegations that just profited from any of his

9  conduct.

10          THE COURT:  Well, that's interesting.  I don't know

11  that most people would sell a product in which they are not

12  making any profits whatsoever.

13          MR. ARIFI:  Profit is not an element to the relevance

14  of the tax returns.

15          THE COURT:  That's a good point as well.

16          MR. ROSEMBERG:  And there is a difference between

17  relevance and admissibility, right?

18          So if it is relevant, since the financial statement is

19  relevant for purposes of establishing statutory damages as to

20  Mr. Arifi's argument, he can later argue to the Court how much

21  of the tax returns, or whatever, goes to the jury.  I don't

22  think that should be a consideration at this point.  I think

23  that's premature.

24          MR. ARIFI:  Well, I believe profits was the first

25  factor that Mr. Rosemberg was explaining regarding the

1  *Luxottica Group v. Casa Martinez* for.  So it's a relevance

2  factor and it is not alleged in the complaint.  I don't see the

3  relevancy here as to Mr. Berkowitz' personal tax returns, Your

4  Honor.

5          THE COURT:  Do you have a case, Mr. Rosemberg, where

6  the personal tax returns of the owner of the company were part

7  of the Court's analysis in determining statutory damages?

8          MR. ROSEMBERG:  Your Honor, Mr. Berkowitz is a

9  Defendant.  He is alleged to be the moving force behind the

10 counterfeiting activities.  So there is no distinguishing

11 between the company and him.  This isn't about piercing the

12 corporate veil.

13         One need not pierce the corporate veil to hold an

14 officer liable because the company acts through its agents.

15 And so corporate officers are individuals who are alleged to be

16 the moving force behind the decision of the company to engage

17 in counterfeiting activity are individually liable.

18         So their tax returns are fair game.  This would be the

19 first in -- well, how do I say this?  So to answer the Court's

20 question from the cases that we have cited in our brief, even

21 those direct infringement cases, I am not able to tell the

22 Court off the top of my head whether there was an individual

23 Defendant is --

24         THE COURT:  I don't see an individual Defendant named

25 in either one of those cases.

1    MR. ROSEMBERG:  But it doesn't matter.  It is not a

2  distinction that should matter because the jury must still

3  assess statutory damages against Mr. Berkowitz.

4    THE COURT:  Well, actually, I do see Frank A. Alonso,

5  individually.  That's the *Casa Martinez* court case.

6     Let me see what happened here.

7    MR. ARIFI:  And again there were --

8    MR. ROSEMBERG:  The *Volkswagon v. Verona* case, a

9  recent decision from Judge Goodman from May 18th of 2021.  We

10  didn't cite that, but he relied on the *Casa Martinez* case.

11    THE COURT:  Okay.  So Luxottica Group filed its

12  complaint against *Casa Martinez* and its owners for federal

13  trademark infringement.

14    MR. ROSEMBERG:  And the jury instructions also do not

15  distinguish the manner in which to calculate statutory damages

16  against an individual Defendant versus a corporate Defendant; a

17  the Defendant is a Defendant.

18    THE COURT:  Okay.

19    MR. ARIFI:  And I don't recall that, Your Honor, but

20  it's not pled in their complaint.  It is not alleged in their

21  complaint.  There is no allegations of profit or anything.

22  It's just a conclusory allegation that he was at the top and he

23  controlled all of Focus Camera.

24    THE COURT:  Thank you, Mr. Arifi.  I do hear your

25  argument.

1          Mr. Rosemberg, there was another case that you cited

2    quickly just a few seconds ago.

3          MR. ROSEMBERG:  *Volkswagon Corp v. Verona*, 2021 West

4    Law 1997573.

5          THE COURT:  1997573.  And what happened in that case?

6          MR. ROSEMBERG:  Well, I cite that case for the

7    proposition that Judge Goodman cited to *Casa Martinez* in I

8    guess reaffirming the seven factors that a trier-of-fact would

9    look at to assess statutory damages.

10         THE COURT:  Okay.  So in *Casa Martinez* there was a

11   default judgment entered against the company.  It never really

12   talked about what happened with the individuals.

13         MR. ARIFI:  And again --

14         MR. ROSEMBERG:  I am happy to provide the Court with

15   case law.  To the extent the Court would like me to provide the

16   Court with some authority on individual tax returns, I mean,

17   *Swap Shop* was one of those cases.

18         Visitor's Flea Market from the Middle District was

19   another one.  That was *Coach v. Visitor's Flea Market and*

20   *Delroy Josephs*.  And Judge Dimitrouleas ordered the tax returns

21   for *Coach* in the *Swap Shop* matter and for Preston Henn, who was

22   at the time the owner of that (inaudible).

23         THE COURT:  All right.

24         MR. ROSEMBERG:  I doubt if those were all default

25   cases or not, Your Honor.

1        MR. ARIFI:  Actually, the *Swap Shop* went to trial.

2        MR. ROSEMBERG:  Well, there is quite a few *Coach* and

3   Luxottica cases out there.

4        THE COURT:  I will take a quick look.

5        407064; right, there were a number of individual

6   Defendants to appeal from the Magistrate Judge's order

7   compelling production of Defendant's tax returns.

8        Judge Snow pointed out that Plaintiffs had adequately

9   proven that production of Defendant's tax returns are arguably

10  relevant to lead to the discovery of admissible evidence

11  pursuant to 26(b)(1) to measure the potential damages in this

12  case.

13       There is also a confidentiality agreement that would

14  govern their disclosure which we have here.  The Court finds

15  Defendant's tax returns and related documents are reasonably

16  calculated to lead to discoverable evidence, in particular, to

17  the measure of damages in the case.

18       MR. ARIFI:  And Your Honor, if I may?

19       I believe there is a split in authority in Southern

20  District case law.  And I'm talking about the *Pendlebury v.*

21  *Starbucks Coffee,* 2005 WL 2105024 case.

22       In that case the Court found that the party seeking

23  the production of tax returns must show their relevance to the

24  subject matter dispute and a compelling need for the tax

25  returns.

1          THE COURT:  Right.  And it looks like this case has

2     determined that there was not a heightened standard.

3          MR. ARIFI:  That's right, Your Honor.

4          Your Honor, *Powers v. Target*, January 24 of 2020

5     *Powers v. Target Corp,* the Southern District of Florida ordered

6     the production of tax returns because they were arguably

7     relevant to the terms in that case.  The Courts have not held

8     to a compelling need standard.

9          THE COURT:  Right.  So based on the law that I see in

10    these cases Dimitrouleas -- and I don't see why there would be

11    a compelling need standard in these cases.  And certainly there

12    is a compelling need anyway since this is relevant to showing

13    potential damages.

14          And because there is also a confidentiality agreement

15    in place that would protect the owner, it makes sense to me

16    that the owner's tax returns should be discoverable.  That's my

17    preliminary view of this at this time based on the arguments in

18    front of me.

19          MR. VALORI:  Your Honor, this is Peter Valori.

20          Good morning.  I'm so sorry I was late.  I had the

21    wrong Zoom information and then I had problems getting on

22    there.

23          THE COURT:  Okay.  I see that you are counsel in this

24    case.  How are you this morning?

25          MR. VALORI:  Very well.  How are you?

1          THE COURT:  Good so far.

2          MR. VALORI:  If I may just add one thing.  I have had

3   a lot of hearings with General Magistrate Schwabedissen over

4   tax returns and one thing she always points out is tax returns

5   have multiple parts.

6          They are lengthy documents and they contain lots of

7   information that is just not relevant especially to an

8   individual's personal tax returns.  There are schedules of

9   deductions.  Schedule of depreciation, real estate holdings.

10          Here, I think the thrust of the underlying policy is

11   that it might show information concerning the factors, the

12   sales, the lost revenue, and particularly the sale of this

13   product, the profit from it.

14          And there is only really limited portion of the tax

15   return that would even show that because it's a single product

16   of many, many products and there would be no information on a

17   personal tax return that would reflect the sale of these

18   products.

19          So if Your Honor is inclined to require production, I

20   would urge the Court to limit the production to only the

21   portions of the tax returns that go to the factors that are

22   identified.

23          Even in Plaintiff's own memorandum on Page 3 and that

24   particular as to individual tax returns that it be very limited

25   because none of that information is going to actually show

1    anything having to do with the sale of the products that are in

2    dispute here.

3             THE COURT:  Okay.  Let me hear from Mr. Rosemberg on

4    that.

5             MR. ROSEMBERG:  Sure.  First of all, these were not

6    arguments that were made in advance of the hearing.  But more

7    importantly, that is not the standard for getting tax returns.

8    That is not the standard.

9             I don't believe that the Defendant should have a right

10   to pick and choose what they get to turn over when it comes to

11   the financials, right?  Because even under the jury

12   instructions, the pattern jury instructions of the Eleventh

13   Circuit, we have to look to see and the jury, the trier-of-fact

14   is entitled to see, one, what are the tax returns going to

15   show.  The Defendants' wealth infringing sales.

16            We would like to know from the tax returns how much

17   money Mr. Berkowitz receives and pace himself from Focus Camera

18   and other entities that may be involved.  We just don't know

19   enough and to order now that they can -- one thing is to order

20   is to limit the use down the road, with you that's putting the

21   cart before the horse.

22            MR. VALORI:  Well, his K-1 would show what he received

23   from this entity.  He may work for other companies or he may

24   file jointly with his wife and she earns from other places that

25   have absolutely nothing to do with this.

1          In their own memo, which they filed last night at

2    whatever time, on Page 3 it says:   In calculating statutory

3    damages these are the factors that are looked at.   This is on

4    Page 3 of their memo.

5          The expenses saved and profits reaped, the revenue

6    lost by the Plaintiff, the value of the copyright or trademark,

7    the deterrent effect of others besides the Defendant.   Whether

8    the Defendant's conduct was innocent or willful.   Whether the

9    Defendant cooperated in providing particular records and the

10   potential for discouraging the Defendant.

11         It doesn't identify a general wealth like a punitive

12   damages type of net wealth standard which, you know, is being

13   imposed or attempting to being imposed.   So these factors are

14   the lens through which this type of request should be viewed.

15         And simply saying, well, we want to know everything

16   that he earns from anywhere so that we can trot that out, that

17   doesn't tie back into any of the factors that have been

18   identified by the Court to be relevant to these matters.

19         So, I mean, there is a very -- especially as to the

20   individual, there is a strong risk of overreach and for them to

21   capture information that really is in no way relevant and

22   shouldn't be in their hands.

23         So especially as to the individual, I would urge the

24   Court to limit the information to at the most only what was

25   received from the company, which could again be obtained from

1  the K-1, or 1099s, or other documents of the company's tax

2  return that show how much the principals, owners, or any

3  employees were paid.  So that information is really already in

4  the corporate tax return and in the corporate tax return a.

5        THE COURT:  I appreciate your argument on that, Mr.

6  Valori, but I think Mr. Rosemberg is right in that those are

7  arguments that you are going to be able to make in terms of

8  admissibility.

9        But, at this point, without actually seeing these tax

10 returns, it is hard for him to be able to agree on what is

11 relevant.  At this point of the case it's whatever is

12 calculated to lead to admissible evidence and I think that they

13 have the ability to look at everything and, then, you will be

14 able to make those arguments down the road.  They are valid

15 arguments that can be made in terms of what he's making from

16 other companies and what his wife may be making if it is a

17 joint tax return.  Those are relevant arguments, but not at

18 this point.

19        MR. VALORI:  But even with a confidentiality order in

20 place, you know, the privacy concerns because confidentiality

21 orders cover discovery matters.  The language of the order that

22 was agreed upon does not address admissibility at trial.

23        THE COURT:  Agreed.

24        MR. VALORI:  So, you know, it doesn't stop that.

25        So the privacy interests of an individual, especially

1  the individual owner here as to his personal tax returns is

2  extremely high.

3        That's my point.  They shouldn't be able to rifle

4  through his personal finances because they think it might show

5  that he profited from the sale of one product that the company

6  sold that they claim is, you know, an infringing product.

7        It doesn't, you know, that goes well beyond.  If there

8  was some limitation to things that show the profit that he

9  received, either from the product or at most from the company,

10  that would make a lot more sense.  His schedule showing

11  depreciation of his real estate, or what his stock trading is,

12  or all of these other things and all these other sections of

13  the tax return aren't relevant.

14        MR. ROSEMBERG:  Actually, Your Honor, they are.

15        If you look at the case law interpreting statutory

16  damages, wealth of a Defendant is relevant to a jury's

17  determination of calculating statutory damages.

18        But, moreover, the agreed upon protective order does

19  contain attorney's eyes only designations.  And so to the

20  extent the Defendants at this point want to designate that as

21  attorney's eyes only and only I am permitted to see those

22  documents.

23        THE COURT:  So I do think, Mr. Valori, you will be

24  able to make those arguments later on.

25        And if your argument is that, well, it's his wife's

1   wealth and not his wealth and they filed a joint tax return, I

2   do think that would be relevant, Mr. Rosemberg, an argument

3   that he can make later on that may limit the use of the tax

4   returns, but that's an argument for another day.

5           Once the documents are turned over, then all those

6   arguments can (inaudible) in terms of what is admissible at

7   trial.  So that would be my ruling at this point on that issue.

8           Let's look at request -- I think we're now then at

9   request 42 because that would have handled request number 124;

10  is that correct, Mr. Rosemberg?

11          MR. ROSEMBERG:  Your Honor, I think that would have

12  handled request 116 and 124 as to Focus Camera and request 42

13  and 43 for Mr. Berkowitz.

14          THE COURT:  Okay.  Right.  So now we are up to request

15  number 128.

16          MR. ROSEMBERG:  128, 129 and 130 as to Focus Camera

17  and then request 38 as to Mr. Berkowitz and those relate to

18  corporate structure documents, operating agreements,

19  shareholder agreements, et cetera.

20          THE COURT:  Okay.  So I will hear your argument on

21  that with respect to those documents.

22          MR. ROSEMBERG:  Right.  So, to begin with, you know,

23  Plaintiff is seeking to discover information pertaining to the

24  corporate structure of the company; who are the members and who

25  are the other potential moving forces of the company.

1       Mr. Berkowitz has denied being a moving force.  He has

2   denied his role in the company.  So we're trying to get basic

3   information that would allow us to see who operates the

4   company, who are the decision-makers, and what's the scope of

5   their authority.

6       So the operating agreement and the amendments would

7   clearly provide for that information as would the bylaws.  Any

8   contracts that Mr. Berkowitz has with Focus Camera.  We're not

9   asking for any contract he has with anyone.  Just as to Focus

10  Camera.

11      Corporate structure documents are routinely

12  discoverable in cases.  And in a case like this where you are

13  trying to support the assertion, or where you are trying to

14  discover what a particular person's role is in the company and

15  to the extent of what that role is, or what other roles other

16  individuals may have as to potential liability.

17      I think that's all fair game.  And again, that would

18  be covered by the protective order to the extent that any of

19  that information is confidential.

20      THE COURT:  Okay.  Let me hear from Mr. Arifi, or

21  actually, who is choosing to respond to that argument?

22      MR. VALORI:  That would be Mr. Arifi, Judge.

23      THE COURT:  Okay.  Thank you.

24      MR. ARIFI:  Your Honor, as I mentioned before there

25  are no allegations of *alter ego* or piercing the corporate veil.

1          This isn't a case where the Plaintiff is alleging that

2     there is a company behind Focus Camera that is actually

3     siphoning off the profits and that's what they need to discover

4     in order to pursue the correct Defendant.

5          Furthermore, as far as the individual Defendants are

6     concerned or alleged individual Defendants that are in control

7     of Focus Camera, you know, there are better avenues to

8     determine that.

9          That would be through discovery requests aimed at

10    communications regarding the purchase of alleged counterfeit

11    products and communications that go towards providing Focus

12    Camera authority to sell alleged counterfeit goods.

13         The operating agreement is not going to I illustrate

14    or show who was in charge of the day-to-day activities, or the

15    sale department, or the sale department for the fashion

16    products that Focus Camera sells.

17         Even if they did show members, that does not mean that

18    they are actively involved in the day-to-day operations.  They

19    could be passive investors that have never set foot in a Focus

20    Camera store.  So it is clearly an overbroad request at this

21    point.

22         THE COURT:  Mr. Rosemberg.

23         MR. ROSEMBERG:  Your Honor, again, it's Black Letter

24    law that a corporate officer, shareholder, employee is

25    personally liable for a corporation's infringement when they

1  are the moving force behind the infringement.

2      And so the only way to find out who the moving forces

3  of this company are, we need to know what the corporate

4  structure is.  We have already asked these other categories of

5  documents that Mr. Arifi mentioned, we already included those

6  in our request for production and they objected to all those.

7      THE COURT:  Oh.

8      MR. ROSEMBERG:  When we asked for documents to

9  identify, you know, the person behind the decision to sell

10 these products, they said we can't answer these questions

11 because we don't know what products you're talking about.

12     So putting that issue aside, we are entitled to know

13 the corporate structure of the company.  Who are the people

14 behind it?  Who are authorized to make the decisions?

15     If the bylaws say or if the operating agreement says

16 that Anthony Berkowitz didn't have permission or that wasn't

17 his role, well, that's illustrative and that's relevant, right?

18 That's relevant not just to our claim, but their defense.

19     Who in the company is authorized?  What is the

20 division of labor here?  This all goes to the heart of our

21 claim as to liability.  Who are the agents and who are the

22 actors.

23     THE COURT:  It does seem to me that Mr. Arifi has an

24 argument to be made that a discovery request targeted to who is

25 in charge of the fashion products and the sales and purchase of

1  fashion products for the company ought to give you the correct

2  information to determine who is at least the moving force

3  behind this particular issue.

4      But I am also disappointed to hear that that's not

5  information that Mr. Arifi wants to give up.

6      Is that true, Mr. Arifi?

7      MR. ARIFI:  Well, that is in connection to our motion

8  to dismiss that has been fully briefed and is awaiting oral

9  argument later this week.

10     So the allegations in Plaintiff's claim are not very

11  clear as to what products they are talking about.  And so in

12  their discovery request they ask who was in charge of selling

13  or procuring ex-alleged counterfeit products.  Well, of course,

14  just like we argued in our motion to dismiss we don't know what

15  products they are talking about.

16     THE COURT:  Which product is counterfeit and which

17  aren't?  Is that why you are saying it that way?

18     MR. ARIFI:  That's correct, Your Honor.

19     So as soon as Mr. Rosemberg is able to identify

20  accurately which products he is referring to, of course we will

21  be able to provide the information requested.

22     And we noted that.  We didn't refuse completely.  We

23  said once you identify it, pursuant to our motion to dismiss,

24  we will provide all the information that we can find regarding

25  those --

1          THE COURT:  What if it was limited to regarding the

2    fashion products for Focus Camera and any communications, any

3    information regarding the corporate structure that would show

4    who is involved in the fashion products division essentially of

5    the company.

6          MR. ARIFI:  And I think that would be more narrowly

7    tailored and I think we could work within those confines.

8          THE COURT:  Why wouldn't that work, Mr. Rosemberg?

9          MR. ROSEMBERG:  Again, Your Honor, we have asked for

10   all their internal communications related to the sale of the

11   accused product and there was an objection.

12         We asked for all documents that refer -- you know, we

13   have 130 requests to Focus Camera with objections to pretty

14   much every single request and we tried being very expansive.

15   But this is the first time that I have ever seen an objection

16   to -- the case law it's Black Letter law that corporate

17   structure documents are relevant and discoverable especially

18   when you're suing the company and one of the officers of the

19   company.

20         So this is the first I've heard but, you know, the

21   whole purpose of discovery is to, you know, obtain information

22   to prove your claim, but also you may learn other things

23   regarding other people in the company that are responsible or

24   liable and that may not come out just in narrowing the request

25   just to these issues.  I will give you an example.

1          We have asked for any communications they received

2    from other brand owners regarding allegations of counterfeits,

3    right?  So the law in this circuit and every other circuit is

4    evidence of knowledge that you are selling counterfeits of

5    other brands is relevant and that goes to the issue of

6    willfulness.  They have objected to turning that over.

7          There may be communications.  Maybe not just from

8    relating to Luxottica that goes to this issue that we may

9    discover.  That is all information that may come out in some of

10   these documents in identifying some of the people that may play

11   a role in this.

12         If the Court is inclined to narrow it for now and we

13   reserve our right to seek a broader scope later on, fine.  We

14   have deadlines.  We don't have that much time for discovery in

15   this case, but I think it is premature to say we are going to

16   limit the scope of the request.

17         I mean, I have asked for their operating agreement.  I

18   don't think there is anything confidential about that.  I have

19   asked for Mr. Berkowitz' contract with Focus Camera.  I want to

20   know what's his agreement with the company?  That goes to the

21   heart of our claim that he was the moving force behind the

22   company's operations.

23         THE COURT:  The other point that Mr. Arifi seems to me

24   that jumps out to me is it is probably less burdensome for you

25   to respond to these requests, which are much more general

1   requests, documents that are easily accessible by any company

2   rather than to try to focus that request simply on fashion

3   products.  And I see that one of your objections is unduly

4   burdensome.  It seems to me that that's less burdensome to turn

5   over those documents.

6          MR. ARIFI:  Well, again, they would be overly broad

7   requests, right?  Like I said before, Focus Camera is in the

8   business of selling a slew of different products.  Yet, the

9   only product at issue here is a fashion product, sunglasses,

10  but they want to know the entire structure.  I'm not sure how

11  relevant it is that they need to know who the director of

12  computer sales is, or who leads the sales teams for printers.

13  I'm not sure how that would be relevant for --

14         THE COURT:  The problem I'm seeing, however, since you

15  have refused to answer the more direct questions, then how else

16  are they to determine what the questions are that they should

17  narrow?  How do they narrow this is the question.

18         MR. ARIFI:  Well, Your Honor, we objected to the way

19  the request was phrased due to our motion to dismiss that is

20  currently pending.

21         In our responses we clearly indicate that we are

22  willing to provide the information if the request is clarified.

23  Because as written we cannot respond to it, but once they

24  clarify that, we are more than willing to provide that

25  information.  That's the sole basis of our objection.

```
 1          THE COURT:  I hear your point, but how do they clarify
 2   without knowing the general matter in which the corporation is
 3   set up?
 4          MR. ARIFI:  Well, it's not that their requests are
 5   aimed a specific person, Your Honor.  If they are aimed at a
 6   specific product and that's the issue.
 7          THE COURT:  Right.  How do they determine how that
 8   product is handled and who handles it within the company
 9   without getting at least this general information, which it
10   seems to me should be easy enough for any company to produce so
11   they figure out the corporate structure.
12          My concern is only you can give them that information
13   about how to narrow the request.  And this other information
14   that they asked for in order to use that to narrow the request
15   has not been produced or has been objected to.
16          So if I grant this that gives him the opportunity to
17   ask for the more specific information.
18          MR. ROSEMBERG:  Sorry.  Here I'll give you an example.
19          In request number one they ask for all documents that
20   refer or relate to your decision to authorize Focus Camera LLC
21   to offer to sell and sell the items depicted in Paragraph 18 of
22   the complaint.
23          And our is objection was that the request is vague
24   since Luxottica does not -- and it is true.  It does not
25   identify the invoice numbers, the model numbers, or any other
```

1  identifying marks for the items that it references in Paragraph

2  18.

3          We sell many brands of sunglasses and many brands of

4  Ray-Bans.  They just copy and paste a picture of Ray-Ban

5  sunglasses.  And it is not in dispute that our clients actually

6  sell non counterfeit Ray-Bans.  So we don't know what they are

7  referring to or what the product is.  If they can clarify the

8  product, then we are willing to provide that information as

9  requested.

10          THE COURT:  I hear your argument, Mr. Arifi, but I'm

11  not sure it's helping you.  It's going right back to what I

12  said before.  Okay.  You don't want to give them that

13  information and you don't have enough information in order to

14  narrow the response.

15          Well, then maybe you need to give them a broader

16  amount of information which is the corporate structure and all

17  the information they need so they can assist by saying, okay,

18  thank you for that, now we need to know who this person is.

19          Your argument is only leading me back to granting this

20  much more general request so that they can obtain specific

21  information.  How can you, then, reframe this request?

22          And I'm asking you to work together and work with your

23  fellow counsel here so that this information that the Plaintiff

24  needs is supplied to them.  Rather than just say, well, they

25  should have asked for specifics when they don't know the

1  specifics.

2          MR. ARIFI:  And we're more than willing to do that.

3          And I have a general idea that request documentation

4  regarding the individuals that are in charge of procurement of

5  products or heads of the sales teams.

6          I think that would get to the heart of what Mr.

7  Rosemberg is trying to find out is who are the decision-makers

8  who could potentially be liable for procuring their alleged

9  counterfeit products and authorizing the sale thereof.  I think

10 a request that is tailored to that effect would accomplish his

11 goals as well.

12         THE COURT:  I would agree with that.

13         Mr. Rosemberg?

14         MR. ROSEMBERG:  Again, it is limiting our information,

15 Your Honor.  I'll give you an example.

16         Prior to filing this lawsuit, the Plaintiff had sent

17 two e-mails to the Defendants saying, stop it, you are selling

18 counterfeits.  Stand down.

19         We didn't allege that in the complaint at the outset.

20 So when we amend, if we have to amend, we are going to allege

21 it.  We don't like to embarrassing Defendants -- my clients I

22 should say.

23         And I get a call from opposing counsel who said they

24 never got that e-mail.  Well, now I need to find out who your

25 computer person is and who is in charge of your IT there in the

1  company because I have to take their deposition now.  I want to

2  know where that e-mail is, right?

3       So to allow the Defendant to just narrowly tailor what

4  they believe is relevant, or the people that they think we need

5  to know about, they haven't cited any legal authority to

6  support that assertion that they can decide what's relevant or

7  what's not, or what information we need.  We have already tried

8  to get the information.

9       And as an aside, a few weeks ago Mr. Arifi's colleague

10 Mr. Niro came down to my office in Miami and I sat with him for

11 five hours.  I showed him why all the products are fake and I

12 e-mailed them all the order numbers that they asked for.  They

13 have all the information that they supposedly need.

14      We have been very cordial in trying to move this case

15 along, but the clock is ticking on our deadlines and they have

16 managed to delay this quite a bit now and we just want the

17 information so we can proceed.

18      MR. ARIFI:  So what I am hearing is that Mr. Rosemberg

19 is aware of the types of information from the individuals that

20 he thinks have information.  But, again, his request, he has

21 chosen to phrase his request in such a way that they are overly

22 broad.

23      So if he knows the types of individuals that he's

24 looking for, we will be more than happy to comply with those

25 amended requests.  But as stated, they are overly broad.

1       And apparently, Mr. Rosemberg knows exactly the

2   different roles of the individuals at the company that he

3   wishes to request information from.  So I don't think it would

4   be a very tall order for him to rephrase his request to be more

5   narrow.

6       MR. ROSEMBERG:  Your Honor, the standard for overly

7   broad and overly burdensome is very clear in the Southern

8   District.  If it is unduly burdensome, you submit an affidavit.

9   If it is overly broad, you have to explain that in your

10  objections and that wasn't done here.

11      THE COURT:  Yes, I have to agree with Mr. Rosemberg.

12      I do not see how he is supposed to guess who is

13  responsible and how he should structure this.  And I am not

14  getting the sense that there has been sufficient cooperation

15  for him in order to be able to do that.

16      MR. ARIFI:  And Your Honor, any sort of delay and

17  response to this has been because the discovery requests

18  haven't been narrowly tailored or they haven't been specific

19  enough and that's the only delay.

20      THE COURT:  Okay.  So let's look at reason to compel

21  numbers 128, 129, 130 and 38.  So this information is relevant

22  to prove who is the moving force behind the infringing

23  activities.

24      Plaintiff will be able to use that information to

25  determine who in the company is involved in the activities.

1  Who would have gotten any warnings from the Plaintiff.  And

2  your response has simply been very general that it is overly

3  broad and overly burdensome.  And that's all I have other than

4  the argument that you have made today.

5         So let's talk about the next step because my review of

6  everything so far and just hearing your arguments lead me to

7  the conclusion that it is appropriate to grant this request.

8  The next step is do we need to put anything on the record and

9  do I need to file a written order?

10        I want to give Focus Camera some time to respond.  Is

11  there a deadline for discovery on this case?

12        MR. ARIFI:  Yes, Your Honor, there is.

13        THE COURT:  What is that deadline?

14        MR. ARIFI:  I'm sorry.  Allow me to confirm.

15        Hannah, can you check, please?

16        Sorry, Your Honor, I'm checking right now.  Sorry,

17  Your Honor.  I don't have that date off the top of my head, but

18  we're checking right now.

19        THE COURT:  Okay.

20        THE LAW CLERK:  April 19th, 2022, it looks like.

21        THE COURT:  Okay.  So we are not talking about much

22  time.  After the holidays time starts to move very quickly and

23  compresses itself somehow.

24        So I will allow the Plaintiffs to file this motion on

25  the record and get a written response -- let me look at my

1   calendar.  Is there some reason why Focus Camera and Mr.

2   Rosemberg cannot respond within one week, within seven days so

3   I can submit a written order on this very quickly before the

4   end of the month?

5           MR. ARIFI:  No.  That's fine with us, Your Honor.

6           MR. ROSEMBERG:  Is this new argument, Your Honor?

7           THE COURT:  In terms of -- let me ask you, Plaintiff.

8           Do you want to add anything to your motion to compel

9   that you have already given to me?  I think it is very thorough

10  and I am inclined already to grant it.

11          MR. ROSEMBERG:  On that basis, no, but if the

12  Defendants are going to raise all new issues and cite case law

13  for the first time, I would just --

14          THE COURT:  I think they should have an opportunity to

15  at least with regard to the second set of -- I'm already

16  inclined and very well inclined to grant with respect to the

17  first set of requests.  So I don't need any argument on that.

18          So let's just talk about the second set, which is the

19  corporate structure requests, which would be 128, 129, 130 and

20  38.  I don't think I need anything more from any of the parties

21  on the first set.

22          So what I would like to do is get a written response

23  from Focus Camera and Anthony Berkowitz on the reasons not to

24  compel 128, 129, 130 and 38 to make that clear.  They can file

25  a response.  If you can file a response within seven days.

1           And then, you're right, Luxottica should have an
2   opportunity to reply if that's what you're asking me Mr.
3   Rosemberg, an opportunity to reply in three more days, would
4   that be sufficient?
5           MR. ROSEMBERG:  That's fine, Your Honor.
6           THE COURT:  Or are we getting too close to the
7   holidays to expect --
8           MR. ROSEMBERG:  I'll make it happen.
9           My question is then do we file the motion to compel,
10  but only as to 128, 129, 130 and 38.
11          THE COURT:  That would be fine.
12          MR. ROSEMBERG:  Okay.
13          THE COURT:  Actually it's pretty easier if you --
14  well, that wouldn't make sense then.  Yes, it's better for you
15  to file it only as to those four; 128, 129, 130 and 38 so that
16  I can enter -- but I will enter an order with respect to
17  everything.
18          MR. ROSEMBERG:  Okay.  We will get that filed today if
19  that's what Your Honor wants.
20          THE COURT:  That would be a bit messy, isn't it, since
21  I'm going to enter an order as to everything, a written order.
22          MR. ROSEMBERG:  Your Honor, we can just file what we
23  submitted to Your Honor yesterday.  We can file that right
24  after the hearing.
25          THE COURT:  Easiest thing to do.  Please do that.

1          Okay.  And then, a response from the Defense with

2    regard to only the last four and then a reply from Mr.

3    Rosemberg.  Let me see.  Let me look at my calendar so I can

4    see exactly those date.  Today is the 7th.  So I will be

5    getting something from Focus Camera and Mr. Berkowitz by the

6    14th.

7          LAW CLERK:  And then the 17th for reply.

8          THE COURT:  And the 17th for the reply.

9          And perfect timing because it gives me time to issue

10   an order the week of the 27th the latest so I am not delaying

11   this case in any way and discovery.

12         MR. ROSEMBERG:  Thank you, Your Honor.

13         MR. ARIFI:  Thank you.

14         THE COURT:  And by the beginning of the year everybody

15   will know where they are going in terms of this information.

16         And then, later this week you will have the motion to

17   dismiss heard before Judge Altman as well.  So that should keep

18   things moving.

19         MR. ROSEMBERG:  Great.

20         THE COURT:  Okay.  Anything I didn't clarify well

21   enough?

22         MR. ARIFI:  Your Honor, if I may?

23         I think on the notice of hearing there are also our

24   objections to Plaintiff's notice of intent to serve subpoenas

25   on two third parties; Groupon and Digital Ocean.

```
 1              MR. ROSEMBERG:  Is that set for hearing?

 2              MR. ARIFI:  It was on the notice of hearing.

 3              MR. ROSEMBERG:  Did you guys serve the notice of

 4   hearing?

 5              I'm sorry, Your Honor.

 6              MR. ARIFI:  No, you did.

 7              THE COURT:  Let me ask my law clerk.

 8              Is this on the notice of hearing?

 9              MR. ARIFI:  It's document 34.

10              LAW CLERK:  That was Defendants' objection.

11              The Plaintiff's notice of intent to serve *subpoena*

12   *duces tecum* for production of documents to Groupon Inc. and

13   Digital Ocean, Inc.

14              THE COURT:  That's added as well.  All right.

15              MR. ROSEMBERG:  I'm happy to talk about that right

16   now.  I didn't prepare, but I'm happy to talk about it.

17              MR. ARIFI:  So, Your Honor, our only issue with that

18   is it's all really broad to ask for any sort of documents

19   relating to any infringements.

20              If they were narrowly tailored to allege the

21   infringing products, we wouldn't have any issue with it, but

22   they ask for any and all documents related to any alleged

23   infringements by Defendants.  If they just narrowly tailor it

24   to alleged infringements of Ray-Bans or Luxottica products, we

25   wouldn't have an issue with it.
```

1          THE COURT:  Mr. Rosemberg.

2          MR. ROSEMBERG:  So, Your Honor, Plaintiff's notice of

3   intent to serve subpoenas on Groupon, which is a third party

4   platform through which the Defendants were selling counterfeit

5   Ray-Ban.  And the Plaintiff also wanted to issue a subpoena to

6   a company called Digital Ocean, Inc., which is Defendants' web

7   host provider.

8          And the reason we have identified these two entities

9   is because Plaintiff had sent cease and desist and take-down

10  notices to both Groupon and Digital Ocean, Inc. to say, hey,

11  Digital Ocean, Inc., you're hosting a website that is selling

12  counterfeits and hey, Groupon, you are selling products that

13  are counterfeit that come from a company called Focus Camera.

14         Now, we would like those communications because we

15  have asked the Defense to turn them over and they said none

16  exists.  Now I alluded to this earlier in the hearing.

17         Evidence of knowledge of counterfeiting of other

18  brands is relevant to the issue of willfulness under the

19  statutory damage framework.

20         So if the Defendants were provided notice by any third

21  party, whether it is a web host provider, whether it is E-Bay,

22  whether it is Groupon, or any other company that they are

23  selling products that are counterfeit, then that knowledge is

24  relevant and goes to the heart of whether they knew, or should

25  have known, or should have been alerted to the fact that they

1   were potentially selling counterfeit Ray-Ban products.  This is

2   a holding that has been discussed and held by again Judge

3   Dimitrouleas in the *Coach v. Swap Shop* case.

4           Most recently that I am aware of that was Judge Amy

5   Totenberg in the Northern District of Georgia in the *Luxottica*

6   *v. Airport Mini Mall*.  That case was affirmed by the Eleventh

7   Circuit.

8           So the Eleventh Circuit opinion actually in 2019

9   discussed that.  And I don't have those cites off the top of my

10  head because I wasn't prepared to argue this today, but it is

11  well settled law that knowledge of global counterfeiting is

12  relevant.

13          THE COURT:  That's true.

14          MR. ROSEMBERG:  And so that's why --

15          THE COURT:  So, Mr. Arifi, why is that not relevant?

16          MR. ARIFI:  Well, Your Honor, I don't believe that

17  knowledge of general infringement is going to notify our client

18  that they were specifically selling alleged counterfeit goods.

19          Like I said, this isn't the case where our client is

20  only selling sunglasses.  So if Oakley sent some sort of notice

21  of infringement, our clients would be -- they would know that,

22  hey, there is something up and that they should check their

23  other sunglasses.  They sell thousands of different products;

24  thousands .

25          So if counsel wants to narrow his request to fashion

1  products or to sunglasses, that's fine, but as to all

2  encompassing products, I think that is overly broad.

3       THE COURT:  Okay.  So I don't see that as overly broad

4  based upon the information that I have reviewed in this case

5  and the case law.  That would be relevant to show their

6  knowledge and for this case.  I don't see how we can limit it

7  to simply one type of product.  So I would deny any request on

8  that.

9       MR. ARIFI:  Well, Your Honor, I would also request if

10  possible that we also include this in our briefing since we are

11  already submitting a response to Plaintiff's motion that we

12  could also submit case law regarding our objections to the

13  subpoenas as well.

14       MR. ROSEMBERG:  Your Honor, that was included in the

15  notice of hearing today and they had an opportunity to brief it

16  by 5:00 yesterday and they didn't.

17       THE COURT:  And you were actually very aware that this

18  would be argued today.

19        If you don't have any other argument other than you

20  are simply stating to me, well, we shouldn't have to disclose

21  this, I think that you would have given me that already.

22        And I think the case law on that is quite clear.  If

23  there is any other evidence that your company knew that they

24  were on notice of selling illegal counterfeit products, that's

25  relevant to this case.

1           Is there anything else?

2           MR. ROSEMBERG:  Nothing from Plaintiff, Your Honor.

3           MR. ARIFI:  Nothing.

4           THE COURT:  Okay.  All right.  Thank you counsel.

5           And thank you for the arguments that you have made

6   today.  And I will look forward to getting that document no

7   later than the 14th.  And then, a reply from Mr. Rosemberg no

8   later than the 17th so I can have an order issued on this issue

9   just as quickly as possible.

10          MR. ROSEMBERG:  Thank you, Your Honor.

11          MR. ARIFI:  Thank you, Your Honor.

12          Oh, Your Honor, when we file the motion to compel

13  should we attach all the discovery requests as exhibits?

14          THE COURT:  Yes, I think that will make it clearer.

15          MR. ROSEMBERG:  Okay.  Fair enough.  Thank you.

16          THE COURT:  Thank you.

17          (Thereupon, the proceedings concluded.)

18

19

20

21

22

23

24

25

```
 1

 2                            CERTIFICATE

 3

 4        I hereby certify that the foregoing transcript is an

 5  accurate transcript of the audio recorded proceedings in the

 6  above-entitled matter.

 7

 8

 9

10  01/20/22                      Bonnie Joy Lewis,
                           Registered Professional Reporter
11                            CASE LAW REPORTING, INC.
                              7001 Southwest 13 Street,
12                           Pembroke Pines, Florida 33023
                                   954-985-8875
13

14

15

16

17

18

19

20

21

22

23

24

25
```